[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13796

Non-Argument Calendar

_____

HENRI N. BEAULIEU, JR.,

Plaintiff-Appellant,

*versus*

SAMUEL POWELL,
individually, and in his official capacity as a
State Trooper for the State of Alabama,
CALERA, CITY OF,
a municipality located in and a political
subdivision of Shelby County, Alabama,
CALERA POLICE DEPARTMENT, CITY OF,
a department of the City of Calera in Shelby
County, Alabama,
ANDREW BELL,

individually and in his official as a law
enforcement officer/former law enforcement
officer for the City of Calera, Alabama,
JORDAN MATTHEW LAWLEY,
an individual, et al.,

                                                    Defendants-Appellees,

JESSICA SELF, et al.,

                                                    Defendants.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:22-cv-00878-ACA

————————————

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

        Henri Beaulieu appeals the district court's order dismissing
his amended 42 U.S.C. § 1983 civil-rights complaint on "shotgun
pleading" grounds and denying further amendment. After careful
review, we affirm.

## I.

According to the amended complaint, Beaulieu and his family live on property adjacent to a public swimming pool in a nearby subdivision. They have repeatedly complained to the Calera Police Department about excessive noise at the pool during the summer months, but officers have done little and the noise continues unabated. Beaulieu's wife—an attorney who represents Beaulieu in this case—and parents also filed a nuisance lawsuit in Alabama state court relating to the pool noise, for which Beaulieu has attempted to conduct surveillance and gather evidence.

Beaulieu asserts constitutional claims under § 1983 stemming from this noise dispute. His claims largely relate to an encounter on July 16, 2020, when he drove to the subdivision to try to confirm the identities of pool users for the lawsuit, as he had done several times before. While Beaulieu was stopped in his vehicle on a public street in the subdivision, Officer Andrew Bell approached and said he had received a couple of calls about Beaulieu. Bell was aware of Beaulieu and the nuisance lawsuit, and he said that the surveillance conduct was legal but that Beaulieu "had to keep moving," despite the presence of other parked vehicles on the street.

Beaulieu kept moving through the subdivision and then "circled back around" to the same area, where Bell was speaking with Samuel Powell, a state trooper and former Calera police officer who lived in the subdivision, as well as a "Third Responding Officer" and Jordan Lawley, a subdivision resident. While working as

a Calera officer, Powell had responded to a noise complaint at Beaulieu's residence and had become confrontational with Beaulieu and his wife, whom Powell had accused in Facebook posts of lying about the pool noise. Powell was also named as a defendant in the nuisance lawsuit.

When Beaulieu stopped to check with the officers, Powell said he had received a call about a suspicious vehicle outside his house, and he accused Beaulieu of "disorderly conduct." He took no further action, though, and Beaulieu left the subdivision. Before Beaulieu left, Bell told Beaulieu he was free to be in the area so long as he complied with the traffic code. The Third Responding Officer, for his part, "pace[d] nervously." As this happened, Rachel Lawley, who was married to Jordan Lawley, made disparaging comments about Beaulieu on Facebook.

The next day, July 17, 2018, Beaulieu observed Powell and Jordan Lawley speaking together at the pool and pointing out Beaulieu's surveillance cameras. Beaulieu called out "smile" so they would look towards the camera and he could identify them. Not long after that, an attorney for the subdivision's homeowners' association called Beaulieu's wife based on a complaint that Beaulieu had been taking pictures of children at the pool.

After these events, Powell and Jordan Lawley filed harassment complaints with the police department, and Powell obtained a no-contact order against Beaulieu. This "quasi-civil matter" was dismissed when Beaulieu agreed to stay out of the subdivision for nine months.

Neither Beaulieu nor his family has returned to the subdivision, making it "virtually impossible" to identify pool users for the lawsuit.  Nor has Beaulieu been able to obtain body-camera footage from the City related to the July 16 encounter or other incidents.

## II.

Beaulieu filed his initial complaint in July 2022 against eight named defendants, two described-but-unnamed defendants, and other John Doe defendants.  The complaint was thirty-one pages and eighty-four numbered paragraphs long, with various lettered subparagraphs.  It included causes of action under both federal and state law, organized into two sections titled simply, "Constitutional Claims" and "State Law Claim(s)."  Under Constitutional Claims, Beaulieu alleged not only myriad due-process violations, but also an unlawful seizure, First Amendment retaliation, defamation, false light, and conspiracy.

The district court *sua sponte* reviewed and struck the complaint as an improper "shotgun pleading."  In the court's view, the complaint was deficient under Rules 8 and 10, Fed. R. Civ. P., because the causes of action were not separated into counts or claims but were instead grouped together into two broad sections.  Plus, those sections both "incorporate[d] by reference every preceding paragraph," further muddying the claims and their supporting factual allegations.

The district court ordered Beaulieu to file an amended complaint that "contained a separate count for each claim that contains a factual basis for that claim only," with a heading for each count that identified "the specific [d]efendant(s) against whom the claim is asserted" and "the statute or law under which the claim is brought."

In an amended complaint, Beaulieu reduced the length of the pleading to twenty-three pages and seventy-two numbered paragraphs, and he dropped two named defendants and a described-but-unnamed defendant. The causes of action remained split into two sections: "Section 1983 Action for Violations of the Fourteenth Amendment Due Process Clause Under Color of Law" and "State Law Claim(s)." As before, both sections incorporated by reference all preceding paragraphs.

The first section begins by asserting claims based on Beaulieu's July 16 encounter with Bell and Powell. It alleges, first, that Bell, Powell, the Third Responding Officer, and the Lawleys, individually and in conspiracy with each other, denied Beaulieu due process of law by preventing him from stopping on a public street to gather evidence. The alleged wrongful conduct included the following: (a) Bell told Beaulieu that he could not stop on a public street; (b) Powell "threatened and intimidated" him with a show of force and a false claim of disorderly conduct; (c) the Third Responding Officer "did nothing to intervene and appeared nervous"; and (d) Rachel Lawley made malicious statements about him on Facebook. Second, and relatedly, the amended complaint asserts that

Bell, Powell, and the Third Responding Officer conspired with each other and the City to destroy or not preserve body-camera footage from the July 16 encounter.

The first section also reaches more broadly. One paragraph asserts that, after the encounter, Powell and Jordan Lawley filed false reports of harassment with the police department, that Beaulieu had to "surrender his liberty without cause" to resolve Powell's false complaint, and that the "Defendants' actions" were motivated by evil intent or reckless indifference to Beaulieu's "federally protected rights." Another paragraph charges the City with failing to enforce its police-camera policies and failing to properly train and instruct its officers in the use and preservation of camera footage, not just in relation to the July 16 encounter but to other prior encounters and the civil nuisance lawsuit.

The defendants moved to dismiss the amended complaint on several grounds, including that the amended complaint remained a shotgun pleading. Beaulieu responded in opposition and also filed two additional amended complaints, which prompted additional motions to dismiss.

The district court dismissed the amended complaint as a shotgun pleading and rejected Beaulieu's attempts at further amendment. In the court's view, the amended complaint suffered from the "same deficiencies" as the original complaint, which the court had instructed Beaulieu to cure when it *sua sponte* dismissed that complaint as a shotgun pleading. The court further found that Beaulieu's second and third amended complaints were

procedurally improper, and that, in any case, the amendments were futile because they failed to remedy the deficiencies of the prior complaints. Because Beaulieu "made no meaningful effort to correct" those deficiencies despite receiving notice and specific instructions on how to cure them, the court dismissed Beaulieu's federal claims with prejudice and the supplemental state-law claims without prejudice. Beaulieu now appeals.

## III.

We first consider Beaulieu's challenge to the dismissal of his amended complaint as a shotgun pleading. We review for abuse of discretion a district court's decision to dismiss a complaint as an impermissible shotgun pleading. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

"Shotgun pleadings" are complaints that violate federal pleading rules by "fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) & 10(b). We have "little tolerance for shotgun pleadings" because they "waste judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro*, 878 F.3d at 1295 (cleaned up).

We have identified four rough types of shotgun pleadings. *Weiland*, 792 F.3d at 1321–24. A complaint may qualify as a

shotgun pleading if it (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts"; (2) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) does not separate "each cause of action or claim for relief" into a different count; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* At bottom, though, the issue is not one of form or pleading technicalities, but rather substance—that is, whether the complaint gives defendants fair "notice of the specific claims against them and the factual allegations that support those claims." *Id.* at 1325.

"A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1295 (quotation marks omitted). Before dismissing a complaint on shotgun-pleading grounds, though, the court must "*sua sponte* allow a litigant one chance to remedy such deficiencies." *Id.* The court should "explain how the offending pleading violates the shotgun pleading rule" and order the plaintiff to replead the case. *Id.* at 1295–96. "If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018).

Here, the district court did not abuse its discretion in dismissing the amended complaint as a shotgun pleading. As the court observed, the amended complaint falls into the first and third rough types of shotgun pleadings. It "contain[s] multiple counts where each count adopts the allegations of all preceding counts." *Weiland*, 792 F.3d at 1321. And it does not separate "each cause of action or claim for relief" into a different count, which we described more fully above. *Id.* at 1323. Beaulieu does not dispute that the amended complaint bears these characteristics. Because Beaulieu received notice of these same deficiencies and instructions to cure them when the court struck the original complaint and ordered him to replead, it follows that the court "d[id] not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Jackson*, 898 F.3d at 1358.

Beaulieu responds that, despite these "technical[]" deficiencies, the amended complaint still provided adequate notice of the specific claims against the defendants. We disagree.

To start, while Beaulieu correctly notes that Rule 10(b) does not require plaintiffs to state each cause of action in a separate count unless "doing so would promote clarity," Fed. R. Civ. P. 10(b), he ignores the court's order to comply with that requirement after reviewing his initial complaint.[1] In other words, the court

---

[1] Fed. R. Civ. P. 10(b) states,

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of

determined that "doing so would promote clarity" for Beaulieu's claims, but Beaulieu offers no justification for his failure to follow the court's instructions and separate his claims into distinct counts.

Not only that, but Beaulieu's amended complaint fails "to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading." *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir.2001). The pleading essentially presents a narrative detailing the history of the noise dispute and Beaulieu's and his family's grievances with the City, police officers, and subdivision residents arising from that dispute. It then broadly asserts that the defendants' conduct, both public and private, amounts to a violation of his due-process rights.

Yet Beaulieu fails to identify with any clarity how the defendants denied him due process, other than to assert he had a right to be on a public street to gather evidence for a lawsuit. And when we omit the unsupported assertions of "conspiracy" and "collusion," the connection between the denial of that purported right and much of the alleged wrongful conduct—including malicious comments on Facebook, false reports of harassment, or the failure to preserve evidence—is difficult to discern. "If [Beaulieu] himself cannot offer a coherent explanation for how [or at what point he

circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

was denied due process], we cannot expect the defendants" or the court to do it for him by digging through his scattershot allegations. *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021).

Given the vague and expansive nature of the alleged constitutional injury, the amended complaint was likely to generate equally unfocused responsive pleadings and to "impose unwarranted expense" on the litigants and the court. *See Jackson*, 898 F.3d at 1356–57. Because the district court provided Beaulieu—who is represented by counsel—notice and an opportunity to cure, and Beaulieu failed to remedy the deficiencies, our shotgun-pleading caselaw permitted the district court to dismiss with prejudice. *See id.* at 1358; *Vibe Micro*, 878 F.3d at 1295.

## IV.

Finally, Beaulieu maintains that the district court abused its discretion by denying him the right to amend once as a matter of course and by concluding that the second and third amended complaints were still subject to dismissal as shotgun pleadings. For the reasons explained below, we need not decide whether the second amended complaint was filed "as a matter of course." *See* Fed. R. Civ. P. 15(a)(1).

Rather, we agree with the district court that, even assuming without deciding it was procedurally proper, the second amended complaint did not fix the shotgun-pleading issues the court identified when it struck the original complaint and ordered repleading. Despite some changes in the presentation of the causes of action,

the second amended complaint continues to "contain[] multiple counts where each count adopts the allegations of all preceding counts" and to not separate "each cause of action or claim for relief" into a different count. *See Weiland*, 792 F.3d at 1321–23. Nor can we say that it provides the defendants with any more clarity about the "claims against them and the grounds upon which each claim rests" than the amended complaint, since it does little to narrow the vague and expansive nature of the alleged constitutional injury. *See id.* at 1323. As for the third amended complaint, it violated the court's order not to incorporate other pleadings. And because it purported to incorporate the whole of the second amended complaint, it was likewise subject to dismissal on shotgun-pleading grounds. The district court acted within its discretion by rejecting these amendments.

For these reasons, we affirm the dismissal with prejudice of Beaulieu's federal claims and the dismissal without prejudice of the supplemental state-law claims. *See Vibe Micro*, 878 F.3d at 1296–97 (where a complaint has been dismissed with prejudice on shotgun pleading grounds, supplemental state law claims should be dismissed "without prejudice as to refiling in state court").

**AFFIRMED.**